Coös,
May 4, 1909.

### KEAZAR v. COLEBROOK NATIONAL BANK.

An indorser of a dishonored check, who has paid to the holder's agent the
sum due theron and reimbursed a subsequent indorser for the amount vol-
untarily paid by him to the holder to avoid threatened litigation, cannot
recover the latter sum of the holder, either in his own right, or as assignee
of the party by whom such payment was made.

ASSUMPSIT, for money paid the defendants by R. G. Jameson &
Son, on February 15, 1904.   Writ dated January 21, 1905.   Facts
found, and case transferred from the September term, 1908, of the
superior court, by *Chamberlin*, J.

In June, 1898, the plaintiff was the holder of a check on a
Massachusetts bank for $55, which he indorsed and transferred to
R. G. Jameson & Son, who in turn indorsed the check and depos-

ited it in the defendant bank. The check was protested for non-payment, and both indorsers were duly notified. A few days later the plaintiff met Bailey, cashier of the bank, upon the street, out of banking hours, and gave him $57 in full payment of the check. Soon afterward irregularities were discovered in Bailey's accounts at the bank and he ceased to be cashier. In 1903 the bank presented the check to the Jamesons for payment. They informed the plaintiff, who told them he had paid the check, instructed them not to pay, and offered to save them harmless from all loss and expense on account of a suit, and to give a bond to protect them. Notwithstanding the plaintiff's protest and offer, the Jamesons, not wishing to be involved in a lawsuit, on February 15, 1904, paid the bank $75.70—the amount then due on the check. Shortly afterward the plaintiff paid Jameson & Son the amount paid by them to the bank, and brought this suit.

When Bailey received the money of the plaintiff, he did not have the check in his possession and was not then engaged in the business of collecting it. The money was never paid by him to the bank. At the date of the payment of the money by Jameson & Son, the bank knew of Keazar's claim that he had paid it, of his refusal to pay them, and of his instructions to Jameson & Son not to pay. Both parties moved for judgment.

*James I. Parsons* and *Herbert I. Goss*, for the plaintiff.

*Thomas F. Johnson*, for the defendants.

PARSONS, C. J. The question argued, whether the payment to the defendants' cashier Bailey, under the circumstances disclosed in the case, was a payment to the bank, does not appear to be material in the present controversy. For obvious reasons, the plaintiff does not claim he can recover the money which he alleges he paid the defendants in 1898 in discharge of his liability as indorser. His claim is for the money paid by Jameson & Son in 1904, in discharge of the claim of the bank against them as indorsers.

The holder of dishonored negotiable paper has a claim against all of the prior indorsers to whom notice has been given, and may collect of either. Payment by any indorser discharges his own liability upon the paper and that of all subsequent indorsers. Sto. Pr. Notes, s. 401. Assuming that the plaintiff in legal effect, as he claims, paid the bank the amount of the check in 1898, the bank had no legal claim against Jameson & Son in 1904. Having been once paid, the claim of the bank against all parties to the paper was extinguished. But the collection by the bank from

Jameson & Son of a claim already paid them by the plaintiff would not give the plaintiff title to the money paid by Jameson & Son. The money paid by them was theirs,—not the plaintiff's,—and it was paid in supposed discharge, not of the plaintiff's liability to the bank, but of their own. If under the circumstances Jameson & Son could recover the money paid because the bank acquired no title to it, no recovery can be had by the plaintiff because he shows no title to the money. Their payment discharged the plaintiff from liability to the bank, but did not transfer their money to him.

It does not appear that the Jamesons have ever assigned their claim to the plaintiff, or authorized the use of their names in the litigation; but if it be assumed that such assignment could be established in fact or in law, and that Jameson & Son, despite their antipathy to litigation, could be made plaintiffs, the question would arise whether they could recover the money paid by them in discharge of the liability then claimed against them as indorsers. It is clear they could not. They assented to the claim of the bank and paid the money with full knowledge of the plaintiff's claim of prior payment to Bailey, in the face of his protest, offer of indemnity, and proffer of security, because they did not wish to be involved in a lawsuit. Their payment was voluntary, made either because of a mistake of law, if the plaintiff's claim that his payment to Bailey was a payment to the bank be correct, or because they preferred compromise to litigation, as is expressly found. Money paid under such circumstances cannot be recovered. *Strafford Savings Bank* v. *Church*, 69 N. H. 582; *Bradley* v. *Laconia*, 66 N. H. 269; *Pearl* v. *Whitehouse*, 52 N. H. 254; *Sessions* v. *Meserve*, 46 N. H. 167; *Manchester* v. *Burns*, 45 N. H. 482; *Evans* v. *Gale*, 17 N. H. 573; *Peterborough* v. *Lancaster*, 14 N. H. 382, 389; *Bean* v. *Jones*, 8 N. H. 149; *Webber* v. *Aldrich*, 2 N. H. 461.

Upon the defendants' contention that the delivery to Bailey, the defendants' cashier, out of banking hours, on the streets of Colebrook, when he was not engaged in collecting the paper, of money which Bailey neglected to pay the bank, was not a payment to the bank, the payment by Jameson & Son to the bank was a discharge of an existing liability due from them to the bank, which cannot be recovered by any one. Upon either view of the legal effect of the transaction between the plaintiff and Bailey, there can be no recovery against the bank for the money paid them by Jameson & Son.

*Judgment for the defendants.*

All concurred.